O'Neal Davis was indicted for possession of marijuana in the first degree in violation of § 13A-12-213, Code of Alabama 1975 (Supp. 1988). The jury found the appellant "guilty. . . as charged in the indictment," and the trial judge sentenced the appellant to four years' imprisonment in the State penitentiary.
Since the appellant does not challenge the sufficiency of the evidence, the facts pertaining to this case will be briefly stated.
On October 13, 1988, at approximately 8:30 p.m., Officers Stephen Hamm and Governor Jackson of the Dothan, Alabama, Police Department were conducting a surveillance of the First Baptist Church parking *Page 311 
lot in Dothan, Alabama. The officers were watching the lot because it was known as a "high drug area." (R. 35).
The officers saw four men "huddled" close together by the church. When the officers approached the four men in their unmarked automobile, Officer Hamm saw the appellant passing something to one of the four men, Dodd Jones. Dodd Jones dropped the item to the ground.
Upon searching the ground with his flashlight, Officer Hamm discovered a plastic bag, which he identified as containing marijuana. Both the appellant and Dodd Jones were placed under arrest for possession of this substance.
Dodd Jones was charged with misdemeanor possession, and he pleaded guilty to that charge. The appellant was charged with felony possession of marijuana based on a prior conviction for a misdemeanor sale of marijuana. See Ala. Code § 13A-12-213(a) (1975) (Supp. 1988).[1]
 I
The appellant contends that the prosecutor's actions in striking all three black venirepersons from the jury venire constituted a Batson violation. Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The United States Supreme Court made clear in Batson that the State denies the accused equal protection of the law when he is tried "before a jury from which members of his race have been purposefully excluded." Batson, 476 U.S. at 85,106 S.Ct. at 1713, 90 L.Ed.2d at 79-80, quoting Strauder v. West Virginia,100 U.S. 303, 25 L.Ed. 664 (1880). In explaining this exposition, the Court stated:
 "[A] defendant has no right to a 'petit jury composed in whole or in part of persons of his own race.' Strauder at 305. . . . But the defendant does have the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. [citations omitted] The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race [citation omitted], or on the false assumption that members of his race as a group are not qualified to serve as jurors. [citations omitted]"
Even before Batson, the policy of this State was to insure that an accused receive a fair trial, which at a minimum required that he be judged by his peers. See Ex Parte Branch,526 So.2d 609, 618-19 (Ala. 1987). Section 12-16-56, Code of Alabama 1975, was passed as law in 1978. That section states, in full, that "[a] citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin or economic status."
Our Constitution states "[t]hat the right of trial by jury shall remain inviolate." Ala. Const. art. I, § 11 (1901). See
Ala. Const. art. I, §§ 1 6 (1901). Inviolate means "free from substantial impairment." Black's Law Dictionary 742 (5th ed. 1979). Clearly, selection of a jury by discriminatory means constitutes "substantial impairment," not only of the jury selection process but also of the entire judicial system. Further, striking members of a "cognizable group" without clearly and sufficiently enunciating race neutral reasons is synonymous with discrimination. See United States v. Chalan,812 F.2d 1302, 1314 (10th Cir. 1987) (racially-neutral reasons presented by the prosecutor to rebut a prima facie case must be "reasonably specific" and "bona fide"), citing People v. Hall, *Page 312 
35 Cal.3d 161, 672 P.2d 854, 858, 197 Cal.Rptr. 71, 75 (1983) (en banc).
The question then becomes: What race-neutral reasons given by the State are sufficient to rebut a prima facie showing of discrimination? The Supreme Court of Alabama in Ex parteBranch, 526 So.2d 609, 621-25 (Ala. 1987), set out certain guidelines for the trial court to follow in determining what constitutes racially-neutral reasons. Basically, the trial judge, on a case-by-case basis, should consider "all relevant circumstances" in determining if the reasons expressed by the State are sufficient nondiscriminatory grounds. Branch, 526 So.2d at 622. A mere good faith assertion by the prosecutor is not enough. Id. at 623.
The Fifth Circuit Court of Appeals provided some additional guidelines which may assist the trial judge in making his decision. United States v. Campbell, 766 F.2d 26 (1st Cir. 1985). Although Campbell predates Batson, it is not inconsistent with the latter decision. That court stated as follows:
 "In order to rebut a defendant's showing, the prosecutor need not show a reason rising to the level of cause. There are a number of bases on which a party may believe, not unreasonably, that a prospective juror may have some slight bias that would not support a challenge for cause but that would make excusing him or her desirable. Such reasons, if they appear to be genuine, should be accepted by the court, which will bear the responsibility of assessing the genuineness of the prosecutor's response and of being alert to reasons that are pretextual."
Campbell, 766 F.2d at 28, quoting McCray v. Adams,750 F.2d 1113, 1132 (2d Cir. 1984).
The Supreme Court in Batson placed great confidence in the trial judges of our country to remedy the evil of discrimination in the striking of our juries. Batson,476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The decisions of this court have reaffirmed that confidence. See Ex parteScales, 539 So.2d 1074 (Ala.Crim.App. 1988). The trial judge deals with the prosecutors and defense attorneys in his county on a regular basis and, in most cases, can better determine if the striking of potential jurors was discriminatory.
This State's Supreme Court acknowledged this fact inBranch, where it enunciated the "clearly erroneous" standard for a reviewing court on a Batson challenge. Branch, 526 So.2d at 625. "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Powell v. State, 548 So.2d 590
(Ala.Cr.App. 1988), quoting Anderson v. Bessemer City,470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). Seealso Williams v. State, 534 So.2d 372, 376 (Ala.Cr.App. 1988) ("[t]he trial judge is in the best position to determine whether the appellant here established a prima facie case of racial discrimination").
The appellant, a black male, in the case sub judice claims that he was unconstitutionally denied a fair trial as required by Batson because the prosecutor struck all three black veniremen. The trial judge denied the appellant's motion after requiring the prosecutor to set out his reasons for the three strikes. The relevant part of the record as it pertains to the prosecutor's grounds is set out as follows:
"THE COURT: What says the State?
 "MR. AMOS: Your Honor, the State says that we did in fact strike three blacks from the jury panel.
 "We struck number eighty-two. He stated in open court that he knew one of the witnesses subpoenaed for the defense in this case. And I felt like that the situation, I believe this witness was there at the time, although he said he would not give more weight to that witness, I felt like it would be to the State's best interest to strike him.
 "Number seventy-three, after discussing with the police officers, Sheriff's Department, Kay Barbaree indicated that the son had some problems. Ray Owens said the son had some serious legal problems *Page 313 
facing him in the near future. And since Ray Owens, he didn't come out and say what it was, but since he was working in the narcotics, and this case is a possession case, I felt like it would be in the best interest of the State to strike that individual.
 "Seventy-two is the Sheriff's Department, Jerry Hunt, who is the head of the investigation, indicates that this individual does not have the best reputation and would be prejudiced against the State because of some dealings he's had in the past.
"THE COURT: Can you specify upon the dealings?
 "MR. AMOS: Jerry Hunt did not specify, your Honor. Basically, I think what they're afraid of is being sued. I don't know what it was. He would not say what it was, but I got the impression that this individual, although it does not appear to be a conviction, he'd been involved in things that were shady at least. And that's the reason he didn't want to say what it was because there were no convictions.
"THE COURT: What says the Defendant?
 "MS. CROOK: Judge, I don't feel that those reasons are reason enough to cause my client to be tried before a jury that is not a jury of his peers. There are no blacks left on the jury at all, and just because Kay Barbaree and Ray Owens don't think that they would be good prosecution witnesses — jurors, or Jerry Hunt, I don't think that's enough."
(R. 21-23.) (Emphasis added.)
The trial judge agreed that the grounds stated for juror number 82 were proper, but he ordered the prosecutor to collect additional information on jurors 72 and 73.
The following day the proceedings pertaining to theBatson challenge continued as follows:
 "MR. AMOS: I'd like to show the Court for the Court's benefit a list of information we have on jurors, and I think we started on number fifty-three. If you'll turn to fifty-three through [103] each of the witnesses, whether black or white, where we had information from the sheriff's office or police department indicating that we would not want these people to serve on our juries, each of those people have been struck. There are none of those left on the jury that we have struck in this case.
 "Number seventy-three, as well Mr. Mitchell, is from Gordon, Alabama. No, excuse me, Mr. Alvin Melton is from Gordon, Alabama. He is a young black male within five years, I believe, of the defendant's age. I have talked to numerous people concerning him, and it would appear that he answered incorrectly to at least one of the questions that I — or did not respond to one of the questions I asked of the venire in that: Do you have any relatives who have been prosecuted or arrested for commission of crimes? Mr. Melton has at least four relatives. I called and checked with the Chief of Police of Gordon this morning. Virgil Melton, Sharon Melton, James Melton, Charles Melton. All relatives of his, all have been prosecuted for worthless checks here in Houston County. We feel that would tend to prejudice him somewhat against the State.
 "Mr. Mitchell, number seventy-three, (sic) [rather seventy-two] he and his son run a trucking company. They have been cited on numerous occasions for violations of the law in regard to that trucking company. He used to work at the county jail. The Sheriff's Department had nothing but problems with him when he worked at the county jail. He left under, although he was not fired, under less than admirable conditions. And our offices also prosecuted his son.
"THE COURT: Okay. That's good."
(R. 26-28.) (Emphasis added.) The trial judge, then satisfied with this information, denied the Batson motion.
While the removal of all blacks from the venire should be considered as strong evidence of a Batson violation, seeBranch, 526 So.2d at 626, it "does not constitute a prima facie showing of discriminatory selection of the venire." Sashner v.State, 500 So.2d 1322, 1323 (Ala.Cr.App. *Page 314 
1986). It should, however, "raise an inference" that the potential jurors were excluded because of race. See UnitedStates v. Chalan, 812 F.2d 1302, 1314 (10th Cir. 1987) (in appropriate cases, striking of only one member of appellant's race presents a prima facie case of discrimination).
That consideration should at least cause the trial judge to raise an eyebrow of suspicion and inquire further into the State's motives. See Branch, 526 So.2d at 624. The trial judge in the case sub judice conducted a proper inquiry and found the grounds set forth by the State to be sufficient to rebut the discrimination claim. See Nesbitt v. State, 531 So.2d 37
(Ala.Crim.App. 1987).
Finding that the process employed by the trial judge was proper does not imply that his finding was not "clearly erroneous." We must review separately the grounds stated by the prosecutor for each venireperson and determine if those grounds were sufficiently race-neutral.
 A
JUROR NUMBER EIGHTY-TWO: This potential juror stated on voir dire that he knew one of the witnesses subpoenaed by the appellant. The State struck him on those grounds.
We find that this venireman's potential bias was a sufficient nondiscriminatory, race-neutral reason for striking him. The trial judge's finding as to this juror was not "clearly erroneous."
 B
JUROR NUMBER SEVENTY-THREE: At first, the prosecution stated that this venireman's son had "some serious legal problems" (R. 22) facing him in the near future, possibly dealing with drugs. The trial judge, unsatisfied with this reason, ordered the prosecutor to investigate the matter and provide more specific reasons, since his information was provided by a local law enforcement officer.
The prosecutor returned and stated that this venireman was a young black male, "within five years . . . of the defendant's age." (R. 27). A strike based on age may be a sham or pretext.Avery v. State, 545 So.2d 123 (Ala.Cr.App. 1988). We do not need to address whether this strike was a sham, however, since the prosecutor stated an additional ground for striking this venireman.
The prosecutor stated that he asked: "Do you have any relatives who have been prosecuted or arrested for commission of crimes?" This venireman did not respond. The prosecutor discovered, however, that four of the venireman's relatives had been arrested in the county for "worthless checks." (R. 27-28).See Nesbitt.
We find that the trial judge's determination as to this potential juror was not "clearly erroneous." See United Statesv. Campbell, 766 F.2d 26, 28 (1st Cir. 1985) ("[a]lthough . . . the prosecutor changed his reasons as the hearings progressed, in context, the 'changes' might be viewed as elaborations, enunciated as called for by questions of court or counsel").
 C
JUROR NUMBER SEVENTY-TWO: At first, the prosecutor stated that he was informed by a local law enforcement officer that this venireman's reputation was questionable and his dealings were "shady at least." (R. 22.)
Upon further investigation as ordered by the trial judge, the prosecutor stated that this venireman and his son operated a trucking company which had been cited numerous times for violations of the law. His son had also been prosecuted by the Houston County district attorney's office. Additionally, the venireman was a former employee with the Sheriff's Department who left "under less than admirable conditions." (R. 27.)
All of these reasons collectively, and perhaps individually, present sufficient race-neutral reasons for striking this venireman. These grounds for the latter two veniremen are further reinforced by the prosecutor's claim that he struck all jurors, whether white or black, where he received information by the local law enforcement agencies *Page 315 
that these people would not make good jurors for the State. This is evidence, at least, of the absence of disparate treatment. See Powell.
We hereby hold that the findings of the trial judge as to the appellant's Batson challenge were not "clearly erroneous."
 II
The appellant next contends that the trial judge committed reversible error by refusing to grant the appellant's motion to dismiss the indictment and his motion to suppress the plastic bag of marijuana.
On March 14, 1989, the appellant filed a pre-trial "motion to have evidence independently analyzed for fingerprints at [the] State's expense." (R. 221.) The appellant requested that the plastic bag containing the marijuana be sent to the Alabama Bureau of Investigation (ABI), Identification Department, in Montgomery, Alabama, for fingerprint analysis. The appellant asserted as his grounds that he never possessed the marijuana, never touched the plastic bag, and that his fingerprints would not be found on the bag. The duty judge granted the motion and ordered the State to comply within seven days.
On March 17, 1989, the appellant filed a motion to suppress "all evidence seized" on the ground that there was not a sufficient nexus between the appellant and the marijuana. (R. 224). The duty judge held that this motion should be heard at the time of the trial.
On April 3, 1989, the appellant filed a "motion to compell [sic] production instanter," stating that the district attorney had not complied with the duty judge's previous order to have the plastic bag fingerprinted. The duty judge again granted this motion and ordered the State to "furnish the fingerprint material to [the] ABI immediately, in accordance with [his] order of March 16, 1989." (R. 228.)
As directed by the duty judge, the appellant again raised his motion to suppress at the pre-trial conference. The trial judge, at this time, did not address the merits, but the relevant portion of the record proceeded as follows:
"MS. CROOK:
". . . .
 "I'd also like to point out one other thing, and that is, Judge, we asked that the evidence be sent to Montgomery for fingerprint analysis, and that was never done. I filed a Motion to Compel. The State was compelled to send it to Montgomery, and they still have not done it.
"MR. AMOS: It's been sent and is back.
"MS. CROOK: Been sent to Montgomery?
"MR. AMOS: Um-hum.
 "MS. CROOK: I never received a report. I never received word.
"MR. AMOS: There were no usable prints.
"MS. CROOK: I know that's what Joe Saloom said."
(R. 10) (Emphasis added.)
Then, immediately preceding this trial, the appellant raised the motion to suppress again. The relevant portion of the record at this time went as follows:
 "MS. CROOK: Yes, sir. We make a motion that the evidence in this case be suppressed. There's been no significant connection made between the defendant and the drugs that were found.
 "Also, Judge, I'd like to add another ground at this point, and that is that we have asked that fingerprints be — fingerprint analysis be done on the bag that contained the alleged marijuana. I got a Motion to Compel on that, and the basis for my asking that it be sent to ABI was Joe Saloom from the State lab here in Enterprise told me the best place to do it is in Montgomery. So I asked that it be sent to Montgomery. In fact, we did have a motion to compel, and it was never sent to Montgomery.
"THE COURT: Mr. Amos.
 "MR. AMOS: I don't know whether it was sent to Montgomery or not, Your Honor. I know the bag was processed in Enterprise for fingerprints and no fingerprints suitable for comparison were developed in Enterprise. *Page 316 
 "MS. CROOK: Judge, Mr. Saloom told me that he probably would not be able to lift the fingerprints; it would need to go to Montgomery when I called him. He did tell me that fingerprints can be lifted off a plastic bag, but it would need to be done in Montgomery where the experts are.
 "THE COURT: You have the report this bag was processed for latent prints? 'No prints suitable for comparison were developed.'
 "MS. CROOK: Yes, sir. That was by Joe Saloom, but like I said, he said he was not an expert in this area. He told me he would try to do it, but he said it needed to be sent to Montgomery. That is why my request, my motion was to have it sent to Montgomery.
 "THE COURT: All right. What else we got? I grant there's no connection between the defendant and the alleged controlled substance.
 "MS. CROOK: The way I understand the facts the controlled substance was found on the ground behind another, a codefendant [sic] who was charged with and pled guilty to possession of marijuana.
"THE COURT: All right. Motion to Suppress denied."
(R. 30-32.) (Emphasis added.)
The appellant's motion to suppress was based on two grounds: (1) no sufficient connection was shown to exist between the appellant and the plastic bag of marijuana; and (2) the State's failure to comply with the duty judge's order to send the plastic bag to Montgomery, Alabama, for fingerprint analysis.
We start by stating that a denial of a motion to suppress comes to us with great emphasis on the trial judge's decision. The findings of a trial court on the disputed factual questions involved in a motion to suppress are "binding on the Court of Criminal Appeals unless clearly erroneous." Jones v. State,526 So.2d 668, 671 (Ala.Cr.App. 1988), citing Simmons v. State,428 So.2d 218, 219 (Ala.Cr.App. 1983).
Rule 18.5(a), A.R.Cr.P.Temp. 1984, gives a trial judge some guidance when a party has failed to comply with a court order concerning discovery. This rule reads in full as follows:
 "(a) Noncompliance. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; grant a continuance if requested by the aggrieved party; prohibit the party from introducing evidence not disclosed; or enter such other order as the court deems just under the circumstances."
A.R.Cr.P.Temp. 18.5(a) (emphasis added).
The word "may" is permissive and allows the trial court great latitude. Additionally, the last phrase of this rule instructs the trial court to act as it "deems just under the circumstances."
A similar issue was presented to this court in Petite v.State, 520 So.2d 207 (Ala.Cr.App. 1987). In Petite, the prosecutor failed to comply with a discovery order. As a result, the appellant claimed that he was prejudiced and that the evidence which was not disclosed to him should have been excluded. The trial judge disagreed, and the evidence was admitted.
This court held that the appellant "fail[ed] to show any disadvantage he suffered," and that he failed to prove that exclusion of the evidence "would have raised a reasonable doubt concerning his guilt. . . ." Petite, 520 So.2d at 209, quotingRobinson v. State, 528 So.2d 343 (Ala.Cr.App. 1986). See alsoClemons v. State, 491 So.2d 1060 (Ala.Cr.App. 1986); Hurst v.State, 469 So.2d 720 (Ala.Cr.App. 1985).
This court also addressed an analogous situation where the prosecutor failed to disclose requested Brady material. See,e.g., Gardner v. State, 530 So.2d 250 (Ala.Cr.App. 1987), aff'dsub nom. Ex parte Weaver, 530 So.2d 258 (Ala. 1988). Such non-disclosed evidence is "material" only when "it is reasonably probable that the outcome of the trial would have been different. . . . " Gardner, 530 So.2d at 253, quotingHamilton v. State, 520 So.2d 155 (Ala.Cr.App. 1986). That is, as stated in *Page 317 Petite, the appellant must show that a "reasonable doubt" of his guilt would have been raised if the evidence had been provided to him and admitted at trial.
In the case sub judice, Joe Saloom, the Director of the Crime Lab (Alabama Department of Forensic Sciences) in Enterprise, Alabama, tested the plastic bag containing the marijuana. He used a technique known as super glue fuming or cyanocrylic method. The test was requested by the appellant's counsel. As Saloom testified, no usable prints were lifted.[2]
Saloom did state, on cross-examination, that the ABI had a laser technique that might detect fingerprints not otherwise detectible. It was his professional opinion, however, that the process would not have detected prints not found by using the super glue method.
If the plastic bag at issue had been sent to the ABI in Montgomery for fingerprint analysis, only three findings are possible: (1) the appellant's prints would have been discovered; (2) no prints would have been discovered; or (3) the prints of a third person would have been lifted.
If the appellant's prints had been found, this fact would be more harmful to him since it clearly would have provided a sufficient nexus between the appellant and the plastic bag containing marijuana.
If no prints had been found, the effect would have been no different than the finding made by Saloom. If anything, the absence of prints is favorable to the appellant.
Therefore, the only remaining possibility is that the prints of someone else would be found on the plastic bag. This fact, while admittedly exculpatory, would not necessarily create "reasonable doubt" in the minds of the jurors as to the appellant's guilt. Officer Hamm testified that he saw the appellant hand something to Dodd Jones, who dropped it on the ground. (R. 36). The plastic bag containing marijuana was found directly behind Jones. And, as stated above, the appellant had the opportunity to argue at trial that the absence of fingerprints meant that the State could not prove that he handled the plastic bag. The appellant has failed to show that the absence of his prints in this latter possible scenario would have created a "reasonable doubt" as to his guilt in the minds of the jurors.
"[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."Arizona v. Youngblood, ___ U.S. ___, 109 S.Ct. 333, 337,102 L.Ed.2d 281 (1988). Here, there was no such showing.
For the reasons shown, the decision of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Section 13A-12-213, Code of Alabama 1975 (Supp. 1988), states as follows: "(a) A person commits the crime of unlawful possession of marijuana in the first degree if . . .
 (2) He possesses marijuana for his personal use only after having been previously convicted of unlawful possession of marijuana in the second degree or unlawful possession of marijuana for his personal use." (Emphasis added.)
The appellant was previously convicted for the sale of marijuana. He argued at trial that he therefore could not be convicted for this crime because of the express language of the law. The State argued that the sale naturally encompasses the possession. This matter was not, however, raised on appeal, and we thus are not required to address it at this time.
[2] In Curtis v. State, 183 Ga. App. 6, 357 S.E.2d 849, 851-52
(1987), testimony was presented that "no 'usable' fingerprints had been obtained." That court, in addressing the trial court's denial of the appellant's motion to suppress, stated as follows:
 "The lack of any usable fingerprint evidence would more nearly constitute an exculpatory rather than an inculpatory factor. . . . The failure of the trial court to suppress what was arguably the only evidence of a potentially exculpatory nature could not possibly have harmed appellant."
Id. 357 S.E.2d at 582. (Emphasis in original.)