STATE of Wisconsin, Plaintiff-Respondent,

v.

Hugh L. DAVIDSON, Defendant-Appellant.†

Court of Appeals

*No. 91-0345-CR. Submitted on briefs September 6, 1991.—Decided November 21, 1991.*

(Also reported in 479 N.W.2d 181.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *John D. Lubarsky,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. Defendant Hugh Davidson appeals from a judgment of conviction for three counts of delivery of a controlled substance as a second offense, contrary to secs. 161.41(1)(c)1 and 161.48(2), Stats., and from an order denying his motion for post-conviction relief. The issue is whether Davidson was denied effective assistance of counsel. Davidson is black. His defense counsel did not object when the prosecutor used a peremptory challenge to exclude the only black venireperson from the petit jury. At a post-conviction hearing, the trial court concluded that, because the state had presented neutral, nonracial reasons for its use of the peremptory challenge, the defense counsel's performance was not deficient. We affirm.

I.

The jury was selected on December 20, 1989. Of the twenty venirepersons, one was black. The prosecutor and defense counsel were each allowed four peremptory challenges. The prosecutor used one of his peremptory challenges to eliminate the black venireperson. Defense counsel did not object.

The jury found Davidson guilty on all three counts of delivery of a controlled substance and the trial court entered a judgment of conviction. Davidson moved for post-conviction relief, alleging that he was denied his constitutional right to effective assistance of counsel. Davidson argued that his defense counsel was ineffective

because he failed to make a *Batson*[1] objection when the prosecutor used a peremptory challenge to eliminate the black venireperson.

At a post-conviction hearing, Davidson's defense counsel testified that, because he was unaware of the *Batson* decision, he did not object to the prosecutor's use of a peremptory challenge to remove the black venireperson. The prosecutor testified that he exercised the peremptory challenge because he was familiar with the black venireperson's last name, and that he was aware that numerous other individuals with the same last name had been criminally prosecuted. The prosecutor testified:

A. My familiarity with the H——— name, and specifically in Beloit, is that it is a not so large family in terms of numbers of people involved in that family, but the ones that I knew of as—probably as a result of my position as an Assistant District Attorney here in Beloit . . . were involved criminally . . . [and] were prosecuted by the Rock County District Attorney[']s Office.

Q. Is that a well-known name to the best of your knowledge, to prosecutors at least, in Rock County?

A. Certainly.

Q. Would you question the professional judgment of anybody who did not strike a H———, or [someone] who was related to one of the charged H———s?

A. Yes, I would question that.

Q. Why?

---

[1]*Batson v. Kentucky,* 476 U.S. 79 (1986).

A. Well, first off, because . . . in terms of the number of H————s that I am aware of, it seems that nearly all, or at least most of the H————s that I am aware of, have been involved in the criminal system to some extent.

The prosecutor also testified that race did not play any part in his decision to strike the black venireperson.

The trial court denied the post-conviction motion, concluding that the defense counsel's performance was not deficient. The trial court found that, had a *Batson* objection been lodged, it would have been denied because the prosecutor had articulated a "neutral and clear and reasonably specific reason" for striking the black venireperson. The trial court also concluded that Davidson had not been prejudiced by his defense counsel's failure to object.

## II.

██ In order to show ineffective assistance of counsel, the defendant must prove both that his or her trial counsel's conduct was deficient and that the deficient performance prejudiced his or her defense. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *State v. Pitsch,* 124 Wis. 2d 628, 633, 369 N.W.2d 711, 714 (1985). Davidson argues that his defense counsel's performance was deficient because he did not lodge a *Batson* objection.

██ In *Batson,* the United States Supreme Court developed a three-step test for evaluating claims that a prosecutor has used peremptory challenges in a manner violating the equal protection clause. Although the ultimate burden of persuasion always remains with the defendant,

the burden of production shifts during the respective steps of the *Batson* test.

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York,* 111 S. Ct. 1859, 1866 (1991) (plurality opinion) (citations omitted).

The state concedes on appeal that Davidson could have established a prima facie case. Only one of the venirepersons was black. The prosecutor used a peremptory challenge to exclude the black venireperson from the petit jury. *See State v. Walker,* 154 Wis. 2d 158, 177, 453 N.W.2d 127, 135, *cert. denied,* 111 S. Ct. 397 (1990).

The question presented is whether the prosecutor's explanation was race-neutral.

> A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Hernandez,* 111 S. Ct. at 1866.

In *Hernandez,* the defendant objected to the prosecutor's exercise of peremptory challenges to strike two Latinos from the jury. The prosecutor stated that he had struck the jurors because he felt that they might have difficulty accepting the translator's rendition of Spanish

language testimony. *Id.* at 1864-65. The Court concluded that this explanation was race-neutral. The Court explained, "[n]othing in the prosecutor's explanation shows that he chose to exclude jurors who hesitated in answering questions about following the interpreter *because* he wanted to prevent bilingual Latinos from serving on the jury." *Id.* at 1867-68 (emphasis in original).

The prosecutor here offered a race-neutral basis for the peremptory strike of the black venireperson—his concern that a large percentage of individuals in the community with the same last name as the black venireperson had criminal records. That this concern was based in fact is apparent from items introduced by the state at the post-conviction hearing. A Beloit city directory lists twenty-nine individuals with the same last name as the black venireperson. Eighteen persons with the same last name had criminal records in Rock County, and had been charged with over eighty separate offenses.

Kinship to a person who has been criminally charged or convicted may constitute a legitimate racially-neutral reason for striking a venireperson. *See, e.g., United States v. Johnson,* 941 F.2d 1102, 1109-10 (10th Cir. 1991) (brother); *United States v. Jackson,* 914 F.2d 1050, 1052-53 (8th Cir. 1990) (nephew); *United States v. Forbes,* 816 F.2d 1006, 1009-10 (5th Cir. 1987) (sons); *People v. Harris,* 544 N.E.2d 357, 380 (Ill. 1989) (relatives), *cert. denied,* 110 S. Ct. 1323 (1990); *Davis v. State,* 555 So. 2d 309, 314 (Ala. Crim. App. 1989) ("four of the venireman's relatives had been arrested"); *Sims v. State,* 768 S.W.2d 863, 865 (Tex. Ct. App. 1989) (husband). We conclude that the trial court's ultimate ruling, that the prosecutor did not use his peremptory challenge

41

in a purposefully discriminating manner, was not clearly erroneous.[2] The trial court noted that the prosecutor had been wary of H————s, "not because they were of a particular race, but because they had a particular name."

We conclude that, had Davidson's defense counsel made a *Batson* objection following the prosecutor's strike of the black venireperson, it would have been properly overruled. His defense counsel's performance was therefore not deficient because of his failure to do so.

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. *(dissenting).* "Whether a prosecutor intended to discriminate on the basis of race in challenging potential jurors is . . . a question of historical fact." *Hernandez v. New York,* 111 S. Ct. 1859, 1870 (1991) (plurality opinion). "[A]n invidious discriminatory purpose may often be inferred from the totality of the rele-

---

[2]In *Hernandez,* 111 S. Ct. at 1869, the Court emphasized that an appellate court should treat the issue of discriminatory intent "as a pure issue of fact, subject to review under a deferential standard." The Court further explained:

> Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson[ v. Kentucky,* 476 U.S. at 98 n.21], the finding will "largely turn on evaluation of credibility" . . .. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." [Citations omitted.]

*Id.* The dissent suggests that we are not required to defer to the trial court's finding concerning discriminatory intent because that finding was made at a post-conviction hearing, rather than during voir dire. We note that the procedure followed by the trial court in the present case is identical to that followed in *State v. Walker,* 154 Wis. 2d 158, 164–65, 453 N.W.2d 127, 129–30, *cert. denied,* 111 S. Ct. 397 (1990).

vant facts . . .." *Id.* at 1868 (quoting *Washington v. Davis,* 426 U.S. 229, 242 (1976))).

The totality of the relevant facts includes the following. Davidson is black. His key witnesses were black. The state's witnesses were all white. The state's informant was white. The prosecutor testified at Davidson's postconviction motion hearing that he associated the name of the prospective juror with criminal activity in Rock county, based on his previous experience with persons of that name. However, he did not question the venireperson as to his possible criminal record. He did not question him as to whether any members of his family or relatives had criminal records. He did not question the venireperson as to whether he had family, relatives or friends who were involved in drug activity. Finally, at Davidson's postconviction motion hearing, the prosecutor was asked the following question and gave the following answer:

> Q. When you say that the name, H———, is synonymous with criminal activity in Beloit, do you mean those H———s that are black, or do you mean all H———s?
>
> A. I guess when I think of H———s, I think of H———s in terms of their race, black race.

I conclude from the totality of the relevant facts, that Davidson established "purposeful discrimination" forbidden by *Batson v. Kentucky,* 476 U.S. 79 (1986).

I recognize that, "[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Hernandez,* 111 S. Ct. at 1869. Therefore, deference to the trial court's findings on the issue of discriminatory intent is required. *Id.* However, this deference should be based on the trial court's

evaluation of the prosecutor's state of mind based on demeanor and credibility *at the time the prosecutor's peremptory strike is challenged.* Here, Davidson's trial counsel did not object to the prosecutor's striking of the prospective juror. The prosecutor was not required to explain the basis for his peremptory strike. Therefore, the trial court did not have an opportunity to evaluate the prosecutor's state of mind based on demeanor and credibility. Because trial counsel did not object at the time the prosecutor exercised his peremptory strike, he deprived the trial court of the opportunity to assess the prosecutor's state of mind. I conclude, therefore, that trial counsel's performance was deficient. In this case, the prejudice to the defendant follows from the deficient performance.

For these reasons, I respectfully dissent.