COURT OF APPEALS
DECISION
DATED AND FILED

August 2, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP626-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF753

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

ROBERT A. MARCHESE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Kenosha County: MARY KAY WAGNER, Judge. *Affirmed*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Robert A. Marchese appeals from a judgment of conviction entered after a jury found him guilty of two counts of first-degree recklessly endangering safety, use of a dangerous weapon. He claims the Equal Protection Clauses of the United States Constitution and Wisconsin Constitution were violated when the prosecutor used one of his peremptory challenges to strike from the jury panel the only African-American potential juror. Because the trial court's finding that the prosecutor did not engage in purposeful discrimination is not clearly erroneous, we conclude there was no equal protection violation. We affirm.

## BACKGROUND

¶2 The State charged Marchese with three counts of first-degree recklessly endangering safety, use of a dangerous weapon, after Marchese and some members of a rival gang exchanged gunfire from their cars. Marchese took his case to a jury trial. The jury convicted him of two of the three counts. Of importance to this case, the prosecutor used one of his peremptory strikes to eliminate from the jury panel the only African-American potential juror, S.B.[1]

¶3 After voir dire concluded, the trial court asked the prosecutor to explain why he had stricken S.B. The prosecutor offered two reasons: first, S.B. had a prior criminal record with the Kenosha County District Attorney's office, having been prosecuted for some unspecified offenses in 2004 and 2009. Second, the prosecutor asserted that the court officer, Detective Brian Wilson, told him that when Wilson was introduced during voir dire, S.B. gave the detective "a very—

---

[1] We refer to the jurors and potential jurors only by their initials to protect their privacy.

negative look." The detective agreed with the prosecutor's characterization, explaining to the court that the look S.B. had given the detective was not "a pleasant look." The prosecutor said that this gave him "some concern, since [Detective Wilson] is my court officer and the lead detective on the case," and he did not "want a juror" who reacted negatively to law enforcement, particularly due to Wilson's central role in investigating the allegations against Marchese.

¶4 Marchese moved for a mistrial. He argued that the State had not provided a sufficient, non-race-based reason for striking S.B. Accordingly, he asserted that the State engaged in purposeful discrimination in violation of *Batson*[2] and a mistrial was warranted. The trial court disagreed. It found that the State "expressed an unbiased reason" for striking S.B. and that the reasons provided were "valid."

¶5 Marchese then filed a formal motion for a mistrial with the court, renewing his *Batson* challenge. In support, Marchese argued that the State had stricken S.B. based on his race as evidenced by the fact that the State had not stricken G.M., a white woman who also had a criminal history in Kenosha County. Marchese also contended that it was inappropriate and potentially discriminatory for the State to exercise a strike based on "facial expressions" without first asking the potential juror individual questions.

¶6 The State responded by stating that it had a limited number of peremptory strikes and therefore could not strike every potential juror that it may have wanted. The State also offered additional, nondiscriminatory reasons for

---

[2] *Batson v. Kentucky*, 476 U.S. 79 (1986).

keeping G.M. on the jury, including that G.M. stated on voir dire that she owns a gun. The State explained that it considered gun ownership important in selecting jurors because its presentation of the case involved technical firearm evidence and several other potential jurors indicated a sense of discomfort around the firearm topic.

¶7 Regarding the State's explanation for striking S.B. based in part on the negative expression he made toward the detective, the prosecutor stated that he did not want to question S.B. in front of other prospective jurors because of the potential that S.B. could poison the jury pool based on S.B.'s negative opinions of law enforcement.

¶8 After hearing arguments from both parties, the trial court confirmed its finding that "the State has met its burden" of offering a valid, nondiscriminatory reason for striking S.B. The trial court heard and observed the entire jury selection. It also heard and found credible Wilson's description and perception of the look. The court found the prosecutor's explanations for striking S.B. valid and denied Marchese's motion. Marchese appeals.

## DISCUSSION

¶9 A defendant's challenge to the State's use of its peremptory strikes must first establish a prima facie case that the prosecutor exercised the strikes with discriminatory intent. *See **State v. Lamon***, 2003 WI 78, ¶¶27-28, 262 Wis. 2d 747, 664 N.W.2d 607. The burden then shifts to the prosecutor to state a neutral explanation for the strikes. *See **id.**,* ¶29. If the prosecutor offers a neutral explanation, the trial court must determine whether the defendant has established purposeful discrimination. *See **id.**,* ¶32.

4

¶10    The parties generally agree that the first two prongs of the test were met.  Thus, their dispute on appeal is focused on the third prong; namely, whether the prosecutor's reasons were persuasive and plausible to the trial court.

¶11    Marchese argues that the trial court's finding that the State did not engage in purposeful discrimination in striking S.B. is clearly erroneous.  He asserts that although the State's reasons "appear to be facially race-neutral, in truth [they] are clear to be pretexts for unlawful racial discrimination."

¶12    Marchese contends that the prosecutor's stated reasons were not plausible under the facts of this case.  He states that the first reason regarding S.B.'s criminal record is "plainly ridiculous" and the second reason regarding the "unpleasant look" is a pretext because the prosecutor did not individually question S.B. regarding the look.  Accordingly, Marchese argues, the State did not overcome Marchese's prima facie case of purposeful discrimination.  We conclude that the trial court's finding that Marchese did not establish discriminatory intent was not clearly erroneous.

¶13    "[W]hen the prosecutor offers a ... neutral explanation [for the strikes], the [trial] court has the duty to weigh the credibility of the testimony and determine whether purposeful discrimination has been established." *Id.*, ¶32.  The defendant has the burden to establish that the prosecutor's stated reasons for the strikes were a pretext for purposeful discrimination. *Id.*  "[I]t is at this step that the issue of persuasiveness and plausibility of the prosecutor's reasons for the strike become relevant, and 'implausible or fantastic justifications may [] be found to be pretexts for purposeful discrimination.'" *Id.* (second alteration in original; citation omitted).  Ultimately, however, the "decisive question" at this step is whether the prosecutor's stated reasons for the strikes "should be believed." *Id.*,

¶43 (citation omitted). Because the trial court "is in the best position to determine the credibility of the [S]tate's ... neutral explanations," we give "great deference" to the court's ruling as to whether the prosecutor had a racially discriminatory purpose in exercising the strikes. *Id.*, ¶¶41-42.

¶14 A factual finding is clearly erroneous if "it is against the great weight and clear preponderance of the evidence." *State v. Arias*, 2008 WI 84, ¶12, 311 Wis. 2d 358, 752 N.W.2d 748 (citation omitted). "[A] factual finding is not clearly erroneous merely because a different fact-finder could draw different inferences from the record." *State v. Wenk*, 2001 WI App 268, ¶8, 248 Wis. 2d 714, 637 N.W.2d 417. Thus, "[w]here multiple inferences are possible from credible evidence, we must accept those drawn by the trial court." *State v. Lopez*, 173 Wis. 2d 724, 729, 496 N.W.2d 617 (Ct. App. 1992). "The rationale for applying such a deferential standard is that the determination of discriminatory intent is largely informed by the trial judge's perceptions at *voir dire*." *Id.*

¶15 Here, the trial court found that the prosecutor did not exercise the State's peremptory strikes on the basis of race. We accept the court's determination as to the credibility of the State's race-neutral explanations. The trial court was present throughout voir dire and observed firsthand the questioning of the panel and Wilson's characterization of S.B.'s look toward him. The State explained its neutral reasons for the strike to the court, which again was in the best position to evaluate the credibility of the prosecutor's reasons in an in-person setting.

¶16 Although he contends that the trial court's findings were clearly erroneous, Marchese fails to demonstrate on appeal how the court got it wrong. As we now discuss, Marchese points to nothing in the record to show that the trial

6

court's findings were "against the great weight and clear preponderance of the evidence." *See Arias*, 311 Wis. 2d 358, ¶12.

¶17     Turning first to the State's act in striking S.B. based on his criminal record while not striking G.M. despite her record, Marchese fails to meet his burden of demonstrating that the State's reasons were pretextual. Marchese argues that because it is illegal for G.M., a convicted felon, to own a firearm "[t]he only … logical explanation" is that the State kept G.M. on the jury because she is white. However, the fact that possessing a firearm is illegal does not change the facts that G.M. stated that she owned a firearm and that the familiarity with firearm characteristics that she presumably possesses was viewed as a positive factor by the State.

¶18     The prosecutor's rationale for wanting firearms owners on the jury because the case involved shootings and ballistics evidence is both plausible and persuasive given that some potential jurors expressed an inability to treat Marchese as presumptively innocent of the shooting charges simply because Marchese possessed a firearm. Thus, contrary to what Marchese claims, S.B. and G.M. did not present identically as potential jurors in all respects except for their different ethnicities. The trial court accepted the State's firearm-ownership rationale as a legitimate, nondiscriminatory reason for striking S.B. and not G.M. Marchese has not provided any compelling reasons why we should not accept the court's finding as to this basis for striking S.B.

¶19     Marchese similarly fails to meet his burden of demonstrating that the State's second proffered race-neutral reason, the negative look that S.B. reportedly gave to the detective, was pretextual. Marchese argues that the prosecutor's

failure to individually question S.B. regarding the look toward Wilson shows that this reason was pretextual.[3]

¶20     Marchese also cites to *Flowers v. Mississippi*, 139 S. Ct. 2228 (2019) in support of his pretext argument. He asserts that the *Flowers* Court's reasoning in concluding that there was purposeful discrimination in that case applies equally here. Due to various mistrials and reversals for prosecutorial misconduct and bias in the jury selection process, the state took Flowers to trial six times for murder and successfully convicted him after the sixth jury trial. *Flowers*, 139 S. Ct. at 2234. The same prosecutor represented the State in all six trials, and in reversing Flowers's third conviction, the Mississippi Supreme Court had observed that the case "presents us with as strong a prima facie case of racial discrimination as we have ever seen in the context of a *Batson* challenge." *Id.* at 2235 (citation omitted).

¶21     In reviewing the *Batson* challenge to Flowers's sixth conviction, the Court relied on the totality of the circumstances. *Id.* The Court focused on the collective effects of the facts that the prosecutor had used peremptory strikes to remove five of the six African Americans who were on the panel in the sixth trial, had stricken forty-one of forty-two African Americans over the course of the multiple trials, had engaged in disparate questioning of African-American and

---

[3] We reject Marchese's argument that the failure of the prosecutor to conduct individual follow-up questions of S.B. demonstrates that the State's rationale for striking him is a pretext for race discrimination. Marchese contends that the prosecutor would have insisted on individual voir dire if its peremptory strike of S.B. from the panel had not been racially motivated. In *State v. Lamon*, our supreme court reaffirmed a previous holding that individual follow-up questions are not required in order to uphold a decision to strike a potential juror, even in the face of a *Batson* challenge. *Lamon*, 2003 WI 78, ¶¶72, 92, 262 Wis. 2d 747, 664 N.W.2d 607 (citing *State v. Davidson*, 166 Wis. 2d 35, 479 N.W.2d 181 (Ct. App. 1991)). We do not address this argument further.

White potential jurors throughout the multiple jury selections, and had stricken at least one African-American potential juror while retaining similarly situated White jurors. *Id.*

¶22    Marchese's reliance on *Flowers* is misplaced. The jury selection process that we now review is readily distinguishable from the multiple jury selections in *Flowers*. Unlike *Flowers*, this case involved only one trial, as opposed to Flowers's six trials, all with the same prosecutor. Moreover, again in contrast to *Flowers*, there is no record that the prosecutor in Marchese's trial had a history of purposeful discrimination when impaneling juries. Based on all of the relevant facts, the *Flowers* Court held that the record established that the prosecutor's peremptory strikes were motivated at least in part by a discriminatory intent and purpose. *Id.* Unlike Flowers, Marchese fails to point us to any part of the record that establishes intentional discrimination based on S.B.'s race.

¶23    Here, the trial court found the detective's reported observation of the look by S.B. credible and the reason given by the prosecutor valid. We have in the past upheld a trial court's determination that a prosecutor's striking African-American potential jurors based on their disdain for law enforcement did not violate *Batson*. *State v. Sanders*, 2019 WI App 52, 388 Wis. 2d 502, 933 N.W.2d 670. In *Sanders*, we concluded that the trial court's findings were not clearly erroneous, observing that the prosecutor had expressed a "legitimate, nondiscriminatory concern about potential bias against the State's case." *Id.*, 388 Wis. 2d 502, ¶12. Similarly, we conclude here that Marchese has failed to overcome the "great deference" that we afford the trial court's findings. *See Lamon*, 262 Wis. 2d 747, ¶42.

9

¶24 For all these reasons, we uphold the findings of the trial court and its determination that Marchese did not meet his burden of demonstrating purposeful discrimination by the prosecutor.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.