THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CLARENCE SMITH, Defendant-Appellant.
Fourth District   No. 4—92—0209

Opinion filed November 5, 1992.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Clarence Smith was convicted of murder, aggravated battery and robbery following a jury trial in Sangamon County, Illinois (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a), 12—4(b)(1), 18—1(a)). Defendant was sentenced to 60 years' imprisonment on the murder charge. He now appeals, contending (1) the State failed to rebut the *prima facie* showing that its peremptory challenges had been used in a racially discriminatory manner and (2) the trial court erred in admit-

ting hearsay evidence of incriminating statements allegedly made by defendant. We affirm.

Inasmuch as defendant does not challenge the sufficiency of the evidence—which was overwhelming—against him, we very briefly recite the facts of this case. Defendant was one of four individuals involved in the murder of 18-year-old Paul Babcock. The evidence established that Babcock died of massive brain trauma after being stabbed in the head approximately 11 times with instruments believed to be a Phillips screwdriver and a flathead screwdriver.

Defendant first contends the State failed to rebut the *prima facie* showing that it exercised its peremptory challenges in a racially discriminatory manner. Defendant further argues the trial court erred in applying a pre-*Batson* standard to overrule his objections to the State's use of its peremptory challenges.

■■ The equal protection clause of the United States Constitution forbids a prosecutor from challenging potential jurors solely on account of race on the assumption that black jurors as a group will be unable to impartially consider the prosecutor's case against a black defendant. (*Batson v. Kentucky* (1986), 476 U.S. 79, 89, 90 L. Ed. 2d 69, 83, 106 S. Ct. 1712, 1719.) A *prima facie* showing of discrimination under *Batson* requires that the defendant raise the inference that the prosecutor exercised peremptory challenges to remove venire members based upon their race. (*People v. Andrews* (1992), 146 Ill. 2d 413, 424, 588 N.E.2d 1126, 1133.) Racial identity between the defendant and the excluded venireperson, while not required, remains a relevant factor in determining if a *prima facie* case of discrimination has been established. (*Andrews*, 146 Ill. 2d at 425, 588 N.E.2d at 1133; *Powers v. Ohio* (1991), 499 U.S. 400, 416, 113 L. Ed. 2d 411, 429, 111 S. Ct. 1364, 1373-74.) Once the defendant establishes a *prima facie* case, the burden shifts to the prosecution to come forward with race-neutral reasons for striking the black venire members. (*People v. Williams* (1991), 147 Ill. 2d 173, 220, 588 N.E.2d 983, 1000.) Once a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant has made a *prima facie* showing becomes moot. *Hernandez v. New York* (1991), 500 U.S. 352, 114 L. Ed. 2d 395, 111 S. Ct. 1859; *People v. Jackson* (1991), 145 Ill. 2d 43, 101, 582 N.E.2d 125, 152.

A prosecutor's explanation must demonstrate that the excluded veniremen exhibit a "specific bias" related to the particular cause to be tried, rather than the fact that their race, being shared with the defendant, will bias them in favor of the defendant or render them

unfit to serve on the jury. (*People v. McDonald* (1988), 125 Ill. 2d 182, 198-99, 530 N.E.2d 1351,1358.) The State's explanation for the exclusion of a black venireman cannot be considered race neutral, however, if the State failed to exclude white veniremen having the same or similar characteristics and there are no further characteristics meaningfully distinguishing the white veniremen who were retained from the black venireman who was challenged. However, in many instances there will be no single criterion that serves as the basis for the decision whether to excuse a particular venireman. A characteristic deemed to be unfavorable in one prospective juror and, hence, grounds for a peremptory challenge, may be outweighed by other, favorable characteristics in a second prospective juror. (*People v. Mack* (1989), 128 Ill. 2d 231, 239, 538 N.E.2d 1107, 1111, *cert. denied* (1990), 493 U.S. 1093, 107 L. Ed. 2d 1072, 110 S. Ct. 1170.) When the State's explanations for excluding certain persons from the venire are based upon the fact that it lacked certain information about them, such explanations should be closely scrutinized since they can be easily utilized as a pretext for discriminatory challenges. The courts, in evaluating such explanations, should consider whether the State made any attempt at discovering the unknown information by, for example, requesting that supplemental questions be asked during *voir dire*. *People v. Harris* (1989), 129 Ill. 2d 123, 188, 544 N.E.2d 357, 386.

Once the State has come forward with its reasons for striking the persons from the venire, the trial court must then determine whether the explanations are sufficient to rebut defendant's *prima facie* case. To do so, the trial court must make a sincere and reasoned attempt to evaluate the prosecutor's explanation in light of the circumstances of the case. (*Harris*, 129 Ill. 2d at 174-75, 544 N.E.2d at 379-80.) In reviewing the trial court's finding, we are mindful that a trial court's determination of purposeful discrimination is a finding of fact and will not be overturned on review unless it is found to be against the manifest weight of the evidence. *McDonald*, 125 Ill. 2d at 199, 530 N.E.2d at 1358.

Keeping these principles in mind, we must examine explanations offered by the State for excluding the two black veniremen from the jury.

### JUROR DAVID HOWSE

David Howse stated he was a senior instructor at a health spa in Springfield. He also was a full-time student at Sangamon State University studying law enforcement administration. Howse expressed a desire to obtain employment either with the Illinois State Police or

the Sangamon County police. He indicated he had friends in law enforcement, but none who were involved in this case, nor would he feel the need to explain or apologize to these friends for whatever verdict would be rendered in this case. He also believed that his chances of becoming a State trooper or county deputy sheriff would not be affected by the verdict rendered in this case.

The State exercised one of its peremptory challenges to exclude David Howse. The trial court noted for the record that Howse was black and then asked the State the reasons for excusing him. The prosecutor replied:

> "Judge, there were several reasons. One, he's young. He's a student. I just do not like young jurors. The first juror we excused, Mr. Metcalf, was a student. He was excused for that reason, but the primary reason is the fact that in Sangamon County we have had Howses for defendants for years and years and years, Vincent Howse, Mark Howse, also blacks. I don't know if they're related or not, but like I say, the Howse name is well known in Sangamon County law enforcement and for that reason, that's the primary reason he's been excused."

Defendant noted that the State, while excluding a white male juror who was a student, had accepted a white female student as a juror. Based on this, defendant asserts the explanation for excusing Howse because he was a student was "transparently pretextual." Defendant further contends the second reason asserted by the State—*i.e.*, because other people with the same last name had been prosecuted in Sangamon County—was too vague to rebut the *prima facie* case of discrimination, especially since the prosecutor failed to ask Howse whether, in fact, he was related to any of those people.

Defendant is correct in his assertion that the State accepted a white student, Dawn Colclasure, while rejecting Howse based on his status as a student. However, there are other distinguishing characteristics which differentiate this juror from the one excused. Specifically, Colclasure also had a full-time job in data entry, did not have any friends involved in the field of law enforcement, and was female. These different characteristics were sufficient to explain the alleged inconsistency in accepting her while rejecting David Howse.

As to the second reason offered by the State as justification for excluding Howse, we find it to be race neutral as well. The trial court stated it was familiar with the prosecutor and did not believe his exclusion of this juror was based on race. Defendant contends the State had to establish the juror was, in fact, related to these people in order to make this a race-neutral explanation for excusing him. We

disagree. The possibility that this juror could have been related to other people previously prosecuted in Sangamon County was a sufficiently race-neutral reason for excusing this juror. A trial court may use its experience, as well as its superior knowledge of local conditions and prosecutors, in determining whether the State's peremptory challenges were motivated by discrimination. *People v. Mahaffey* (1989), 128 Ill. 2d 388, 415, 539 N.E.2d 1172, 1185, *cert. denied* (1989), 493 U.S. 873, 107 L. Ed. 2d 156, 110 S. Ct. 203; *People v. Boston* (1991), 224 Ill. App. 3d 218, 223, 586 N.E.2d 326, 330.

### JUROR JOHN WILLIAMS

John Williams, a black, was unemployed at the time of the trial but had previously been employed as a chef at Bauer's restaurant in Springfield. He had a wife, one daughter and a grandson, none of whom were employed outside the home. The State exercised one of its peremptory challenges to excuse John Williams, citing his unemployment as a basis for his exclusion. The State further explained that it had conducted a criminal record search on the pool of jurors which had revealed many people with this name as having criminal records. Noting that this was a common name, the court inquired whether this particular juror had a criminal record. The prosecutor indicated he was unsure whether this particular juror had a criminal record because there were too many people with this name that had criminal records to verify whether this juror was one of those persons. The prosecutor then reiterated his previously stated basis. for excluding this juror, namely his unemployment.

Unquestionably, unemployment is a sufficiently race-neutral reason for excluding a juror. (*People v. Morgan* (1991), 142 Ill. 2d 410, 435-36, 568 N.E.2d 755, 761-62; *People v. Hope* (1990), 137 Ill. 2d 430, 470, 560 N.E.2d 849, 867; *People v. Powell* (1991), 224 Ill. App. 3d 127, 133, 586 N.E.2d 589, 595; *People v. Lovelady* (1991), 221 Ill. App. 3d 829, 838, 582 N.E.2d 1217, 1225.) Thus, the State offered a sufficiently race-neutral reason for excluding this juror.

Defendant suggests the decision in *People v. Mitchell* (1992), 228 Ill. App. 3d 167, 592 N.E.2d 175, is controlling as to the issue of the exclusion of John Williams. In *Mitchell*, defendant challenged the exclusion of a potential black juror. The only peremptory challenges exercised by the State were against blacks not excused for cause. In explaining its use of a peremptory challenge as to one particular juror, the prosecutor stated it had a "rap sheet" indicating a man with the same name, same age and same build as that juror was once arrested in Los Angeles. However, the record revealed that the juror had not

been asked whether he had ever been arrested in Los Angeles. The court also noted the State failed to clarify any discrepancies as to the juror's identity. Thus, the court concluded the reason given for excluding this juror was pretextual. *Mitchell*, 228 Ill. App. 3d at 172, 592 N.E.2d at 178.

The distinguishing factor between *Mitchell* and the present case is that in *Mitchell*, only one reason was given for excluding the juror, which reason was found to be pretextual. On the other hand, here, the prosecutor stated his main reason for excluding John Williams was because of his unemployment status. Thus, standing alone, the existence of a person with the same name as the juror, who possesses a criminal record—without any further questions to link the record with the juror—may be a pretextual reason for excluding a juror; however, since a race-neutral reason was given for excluding John Williams, *Mitchell* is not dispositive of this issue.

■ Finally, defendant asserts the trial court erred in using the wrong standard when concluding the exclusion of these jurors was not discriminatory. After hearing the explanation of the exclusion of John Williams, and the end of the jury selection process when defendant made a motion for a mistrial, the trial court found there was "no systematic exclusion" of the jurors based on their race. Defendant contends the use of the phrase "systematic exclusion" evidences the fact that the trial court was operating under a pre-*Batson* standard. See *Swain v. Alabama* (1965), 380 U.S. 202, 223, 13 L. Ed. 2d 759, 774, 85 S. Ct. 824, 837.

Although the trial court used the terminology "systematic exclusion," we do not believe it was operating under a pre-*Batson* standard. After the exclusion of each juror, the trial court requested a sidebar conference with the attorneys, where it specifically asked the prosecutor to state his reasons for excluding the black juror. The court noted the fact that the defendant was black, the victim was white and the two jurors excluded were black. Furthermore, after hearing the reasons given by the prosecutor, the trial court concluded these reasons were race neutral. Therefore, the trial court's actions indicated it applied the proper standard in concluding there was no purposeful discrimination. We hold, therefore, the trial court did not abuse its discretion in determining there was no prejudicial discrimination by the State in excluding these two jurors.

Next, defendant asserts the trial court erred in allowing into evidence testimony of a witness as to statements made immediately after the murder. The evidence established that defendant and the other three individuals involved in this crime physically assaulted the victim

in front of a house on Seventh Street in Springfield. The evidence further established that two of the defendants left the scene while defendant and codefendant Ray Overton dragged the victim's body behind the house into an alley. Defendant, Overton, Carrie Cook and Rita Davidson then got into a car and drove it around to the alley where the body was located. The testimony of the witnesses established that defendant and Overton went to the trunk of the car, retrieved something from there, went over to the victim's body and then returned and drove to Jacksonville.

Carrie Cook testified that as defendant and Overton were walking back toward the car while it was parked in the alley, after retrieving the items from the trunk and doing something near the victim's body, she heard one man make the statement, "He was a hard one to kill." When asked "Did the other one respond?" she testified, "Yeah, he agreed." On cross-examination, when asked what the other one said, she answered, "He said yeah, he was."

Defendant argues this statement was inadmissible hearsay because of a lack of foundation as to who made the statement. Defendant further argues that even if defendant made the statement, it was inadmissible as an admission of defendant or under the coconspirator exception to the hearsay rule.

The State responds, first, the statement was admissible because it was not hearsay as it was not offered to prove the truth of the matter asserted. The State further asserts even if the statement was hearsay, it was admissible under any one of four exceptions to the rule against hearsay. Finally, the State concludes even if the statement was improperly admitted, it was harmless error not requiring the reversal of defendant's conviction.

Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible unless it falls within the scope of an exception. (*People v. Lawler* (1991), 142 Ill. 2d 548, 557, 568 N.E.2d 895, 899.) Testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not "hearsay." (*People v. Simms* (1991), 143 Ill. 2d 154, 173, 572 N.E.2d 947, 954, *cert. denied* (1992), 502 U.S. 1031, 116 L. Ed. 2d 776, 112 S. Ct. 870.) Testimony of out-of-court statements used other than to establish the truth of the matter asserted does not rest for its value on the credibility of the out-of-court declarant; rather, the value of such testimony rests with the credibility of the witness, who was present in court and subject to cross-examination. *People v. Foster* (1990), 198 Ill. App. 3d 986, 996, 556 N.E.2d 1214, 1220-21.

■ Following these principles, we find the statement testified to by Cook did not constitute hearsay. Defendant testified that he carried the victim's bike into the alley and placed it near the body. He, after doing so, realized his fingerprints were on the bike and wanted to return to the alley to wipe them off. Defendant testified he approached the body and was near the lower portion of it, where the bike was located, wiping off his fingerprints. He testified Overton was near the victim's head but he was unaware what Overton was doing at that time. Defendant testified that upon returning to the car, after wiping off his fingerprints, Overton said something to him which he did not recall and then he just said, "Huh."

Thus, this statement was not offered to prove the truth of the matter asserted in it, *i.e.*, that the victim was hard to kill. Rather, the statement was offered to prove that the conversation took place and defendant was aware of what Overton was doing at the time. It does not matter whether defendant made the statement or merely agreed to it. Either way, the statement indicates defendant was aware of what Overton was doing near the body at that time. Moreover, Cook was subjected to cross-examination by defendant's attorney, who elicited the fact that she did not remember who made the statement and who agreed with it. Accordingly, since this statement was not offered to prove the truth of the matter asserted, it is not hearsay and was properly admitted by the trial court. For this reason, we need not discuss the other assertions for admissibility made by the State.

For the foregoing reasons, defendant's conviction and sentence are affirmed.

Affirmed.

COOK and LUND, JJ., concur.