**Hugh DAVIDSON, Petitioner,**

v.

**June GENGLER, Superintendent, Thompson Correctional Center, Deerfield, Wisconsin, Respondent.**

No. 93–C–0776–C.

United States District Court, W.D. Wisconsin.

May 4, 1994.

Meredith J. Ross, Madison, WI, for Hugh Davidson.

Thomas J. Balistreri, Asst. Atty. Gen., Madison, WI, for June Gengler.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Petitioner, an inmate at the Thompson Correctional Center in Deerfield, Wisconsin, contends that his trial counsel provided him with ineffective assistance by failing to make an objection in accordance with *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), to the prosecutor's use of a peremptory challenge to remove the single black potential juror.

Petitioner has exhausted his available state court remedies in accordance with 28 U.S.C. § 2254(b). In 1991, a Rock County Circuit Court judge held an evidentiary hearing on plaintiff's post-conviction motion and concluded that petitioner had not been denied effective assistance of counsel. With one judge dissenting, the Wisconsin Court of Appeals upheld the circuit court's decision, *State v. Davidson*, 166 Wis.2d 35, 479 N.W.2d 181 (Wis.App.1991) *review denied*, 482 N.W.2d 106 (1992).

I conclude that petitioner is not entitled to a writ of habeas corpus because he cannot demonstrate that he was prejudiced by his trial counsel's failure to make a *Batson* objection. In reaching this conclusion, I find that the correct application of the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), test for determining prejudice on an ineffective assistance claim is not whether the outcome of the trial would have been different, but to ask whether the results of jury selection process would have been different had a *Batson* objection been made. In this case, if a *Batson* objection had been made it would have been properly overruled. Therefore, I conclude that petitioner was not prejudiced by his counsel's conduct.

In an action brought under § 2254, the factual determinations of the state trial and appellate court are "presumed to be correct." 28 U.S.C. § 2254(d); *Lewis v. Huch*, 964 F.2d 670 (7th Cir.1992). From the decision of the Wisconsin Court of Appeals and the transcript of the Rock County court's post-conviction hearing, I find the following facts.

## FACTS

On December 21, 1989, petitioner was found guilty by a twelve-person jury in the Circuit Court of Rock County of three counts of delivery of a controlled substance in violation of Wis.Stats. §§ 161.41(1)(c)1 and 161.-48(2). The jury had been selected from a twenty-person venire; only one of the prospective jurors was black. The prosecutor used one of his peremptory challenges to eliminate the single black potential juror; defense counsel did not object to the challenge.

On January 10, 1991, a post-conviction hearing was held in the Rock County court to determine whether petitioner's trial counsel's failure to object to the striking of the black

potential juror constituted ineffective assistance of counsel. At the hearing, petitioner's trial counsel testified that at the time of trial he had been unaware of the *Batson* decision and that if he had been, he would have objected to the strike. The court found that petitioner had made out a prima facia case under *Batson*, making it necessary for prosecutor would have to come forward with a non-discriminatory reason for the strike.

The prosecutor testified that he struck the black potential juror because he believed the potential juror shared the surname of a number of individuals in Beloit, Wisconsin, that had a history of criminal behavior. When asked about his familiarity with the black potential juror's surname and his reason for striking the black potential juror, the prosecutor testified,

> [m]y familiarity with the ＿＿ name, and specifically in Beloit, is that it is a not so large family in terms of number of people involved in the family, but the ones I knew of as—probably as a result of my position as Assistant District Attorney here in Beloit, was that many ＿＿s were involved criminally that were prosecuted by the Rock County District Attorneys Office.
>
> Q: Is that a well-known name to the best of your knowledge, to prosecutors at least, in Rock County?
>
> A: Certainly.
>
> Q: Would you question the professional judgment of anybody who did not strike a ＿＿, or [someone] who was related to one of the charged ＿＿s?
>
> A: Yes, I would question that.
>
> Q: Why?
>
> A: Well, first off, because ... in terms of the number of ＿＿s that I am aware of, it seems that nearly all, or at least most of the ＿＿s that I am aware of, have been involved in the criminal system to some extent.

The prosecutor testified that race did not play a part of his decision to strike the black potential juror.

In addition to the prosecutor's testimony, evidence was presented that the Beloit phone book listed 29 individuals with the same surname as the black potential juror; that 18 of those listed had criminal records; and that these 18 individuals had been charged with over 80 separate offenses in Rock County.

The prosecutor testified that he did not know whether the black potential juror was related to any of the individuals with the same surname and criminal records when he struck the juror because he did not ask the potential juror any questions about the relationship to the others of the same name. The prosecutor explained that he struck the black potential juror because he feared that the potential juror might have an "ax to grind" with the state if he were related to individuals who had been criminal defendants in Rock County. When the prosecutor was asked why he did not ask the black potential juror whether he would be biased against the state, the prosecutor testified,

> Well, I guess my first reason is that I typically don't like to embarrass a juror, and I think that probably would have occurred if I had asked him. I suppose I could have went through the whole list of criminal convictions of people with the last name of ＿＿, and it would look—it could be embarrassing to him on that first point.
>
> The second point is, I want you to know and understand, as a prosecutor in Rock County and especially in Beloit, the name ＿＿ is synonymous with criminal.

The Rock County circuit judge found that the *Batson* objection had been waived. He went on to find that if it had been made properly, the court would have found the prosecutor's reason for the strike satisfactory because it was a "neutral and clear and reasonably specific reason given for [the] strik[e]." As for petitioner's ineffective assistance of counsel claim, the circuit court found that petitioner could not demonstrate that he had been prejudiced by his trial counsel's failure to object because there was no basis on which to conclude that the failure altered the outcome of the trial. Since the circuit court found no prejudice, it was unnecessary to decide whether counsel's performance was deficient.

On appeal, the Wisconsin Court of Appeals affirmed the circuit court's decision, recogniz-

ing that if petitioner's counsel had made a *Batson* objection, the circuit court would have overruled it. The court of appeals held that striking a juror because of his possible kinship to individuals with criminal records is a neutral and legitimate reason for exercising a peremptory challenge.

## OPINION

Resolution of this petition requires an evaluation of the interplay between the standard for determining ineffective assistance of counsel established by *Strickland* and the United States Supreme Court's application of the equal protection clause to peremptory challenges. In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, the Court held that a prosecutor's use of peremptory challenges to eliminate potential jurors on the basis of race violated the defendant's defendant's right to equal protection under of the Fourteenth Amendment. Subsequently, the Court has expanded *Batson*'s reach to the use of peremptory challenges by defense counsel and civil litigants and to situations where the defendant and the struck juror are of different races. Most recently, the Court extended the holding to peremptory challenges based on gender. *Georgia v. McCollum,* —— U.S. ——, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (criminal defendants); *Edmonson v. Leesville Concrete Co., Inc.,* 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (civil litigants); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (defendant and potential juror of different races); *J.E.B. v. Alabama ex rel. T.B.,* —— U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (U.S.1994) (gender). This expansion has been grounded on the recognition that the harm caused by allowing the discriminatory use of peremptory challenges extends beyond the litigants in a particular case. Discriminatory challenges both infringe on the rights of potential jurors to fulfill their civic duty and threaten to undermine the public's confidence in the our system of justice. *See, e.g., McCollum,* —— U.S. at —— – ——, 112 S.Ct. at 2353–54.

Essential to any *Batson* challenge is a timely objection by defense counsel. *Batson,* 476 U.S. at 99–100, 106 S.Ct. at 1724–25;

*United States v. Chandler,* 12 F.3d 1427, 1431 (7th Cir.1994). In fact, the Court of Appeals for the Seventh Circuit has held that without a timely objection from defense counsel, it is improper for a trial judge even to inquire into the reasons behind a prosecutor's use of a peremptory strike. *Doe v. Burnham,* 6 F.3d 476 (7th Cir.1993). If a party makes a timely *Batson* objection, the trial court must inquire into the basis for the peremptory challenge. The *Batson* inquiry follows the burden-shifting approach employed in civil rights cases,

> First, the defendant must make a prima facia showing that the prosecutor has exercised a peremptory challenge on the basis of race. Second, if the requisite [prima facia showing of racially based peremptory challenge] has been made, the burden shifts to the prosecutor to articulate a race-neutral reason for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*United States v. Marin,* 7 F.3d 679, 685 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 739, 126 L.Ed.2d 702 (1994) (quoting *Hernandez v. New York,* 500 U.S. 352, 359, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991)). *See, e.g., Chandler,* 12 F.3d at 1430–31.

In this case, petitioner's trial counsel's failure to raise a timely *Batson* precludes petitioner from raising the issue at this time. An ineffective assistance of counsel claim is the only remaining vehicle through which petitioner can demonstrate that an improper peremptory challenge provides a basis to reverse his conviction.

To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that this deficiency prejudiced him. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *United States v. Pedigo,* 12 F.3d 618, 622 (7th Cir.1993). To satisfy the deficiency prong of *Strickland,* a criminal defendant must demonstrate that his attorney "failed to exercise the customary skill and diligence that a reasonably competent attorney would have exhibited under similar circumstances." *Pedigo,* 12 F.3d at 622. The prejudice prong

of the ineffectiveness inquiry requires proof that

> there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome.

*Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068; *Pedigo,* 12 F.3d at 623. Respondent concedes that petitioner's trial counsel performed deficiently in not making a *Batson* objection three years after *Batson* had been decided. As a general rule, the failure of trial counsel to make a *Batson* objection cannot be deemed deficient per se. Like any other objection, a *Batson* objection can be forgone for strategic or tactical reasons, *Randolph v. Delo,* 952 F.2d 243, 246 (8th Cir.1991); *Scott v. Gomez,* No. C–91–2181–SBA, 1993 WL 303728 *2 (N.D.Cal. July 29, 1993), but in this case it can be assumed that petitioner has met the deficiency prong of *Strickland* by showing that his counsel did not know that an objection could be made.

The more difficult question is the appropriate application of *Strickland*'s prejudice requirement. *Strickland* employs an outcome determinative test for evaluating prejudice that requires a showing of a "reasonable probability" that a criminal proceeding would have resulted in a different outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. In rare instances, including those in which no counsel is appointed to represent the defendant, or in which the state interferes with counsel's assistance, or counsel has a conflict of interest, prejudice must be presumed because it is "so likely" that a "case-by-case inquiry into prejudice is not worth the cost." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. Petitioner contends that the same presumption should apply here.

The only federal court of appeals even to touch on this issue did not share petitioner's view that prejudice must be presumed. In *Government of Virgin Islands v. Forte,* 865 F.2d 59 (3d Cir.1989), the Third Circuit held that even prior to *Batson,* a trial counsel's failure to honor his client's request to make a *Batson*-like objection and preserve the issue for appeal prejudiced the defendant's appeal and required a remand to determine whether the peremptory challenges could withstand the *Batson* inquiry.[1] Although other federal courts of appeals have ruled on claims of ineffective assistance of counsel for failure to make a *Batson* objections, these cases have been concerned primarily with actions that occurred prior to *Batson* or so soon after it was decided that the trial counsel's failure to raise a *Batson* objection could not be considered deficient performance. *See, e.g., Wiley v. Puckett,* 969 F.2d 86, 101–02 (5th Cir. 1992); *Randolph,* 952 F.2d at 246.

Neither party addresses the application of *Forte* to this case; rather, petitioner urges the adoption of the standard developed by the Alabama Supreme Court that counsel's failure to make a *Batson* objection is presumptively prejudicial. *Ex Parte Yelder,* 575 So.2d 137 (1991), *cert. denied,* ——— U.S. ———, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991). In *Yelder,* the court reasoned that requiring proof that a jury would have reached a different result had the improper challenge not been made and the jury's racial composition different would be to "rel[y] on the very assumption that *Batson* condemns." *Yelder,* 575 So.2d at 139. Therefore, the court held that a determination of prejudice under *Strickland* must follow from counsel's failure to raise a *Batson* objection when a prima facia case of purposeful discrimination could have been made.

The reasoning underlying *Yelder* is persuasive, but the conclusion is less so. I agree that the principle of *Batson* would be violated by requiring a defendant to prove that the outcome of his trial would have been different had a particular potential juror not been peremptorily challenged. To require proof that the racial composition of a jury altered the result of the trial would do violence to *Batson*'s premise that a person's race is not relevant to his qualification to serve as a

---

1. Although the trial took place before *Batson* was decided, the Third Circuit held that it would apply *Batson* to cases pending on appeal when *Batson* was decided even before the United States Supreme Court did so in *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). *Forte,* 865 F.2d at 64.

juror. Such a requirement would also contradict *Strickland*'s presumption that

> [t]he assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker ...

*Strickland,* 466 U.S. at 695, 104 S.Ct. at 2068.

It may seem paradoxical that like other attributes a individual brings to jury service race and gender matter, but neither attribute can be a permissible basis to strike a juror. *J.E.B.,* —— U.S. at ——, 114 S.Ct. at 1431 (O'Connor, concurring) ("[w]e know that like race, gender matters.") However, the Constitution prohibits race or gender-based stereotyping as the basis for a peremptory challenge in recognition of the high systemic costs imposed by allowing these type of assumptions to pervade the judicial process. As Justice Kennedy observed in *J.E.B.,* —— U.S. at ——, 114 S.Ct. at 1434, "[n]othing would be more pernicious to the jury system than for society to presume that persons of different backgrounds go to the jury room to voice prejudice." Further, even if defendants were required to show that race or gender mattered, they would have no realistic way to prove that the outcome of a trial would have been different had a particular juror not been struck. They are prohibited from inquiring into the deliberations process to obtain evidence.

Although I find *Yelder* persuasive to the extent that it recognizes the impracticability of applying *Strickland* to require a defendant to prove that the outcome of his trial would have been different had a *Batson* objection been made, I part company with the Alabama court when it concludes that *Strickland*'s category of presumptively prejudicial defects should be expanded to include a lawyer's failure to raise a *Batson* objection. Unlike the circumstances in which prejudice is presumed under *Strickland,* the failure to raise a *Batson* objection does not suggest an equally high probability of the existence of prejudice. Even a timely *Batson* objection requires only that a trial court conduct an inquiry into the reasons behind the use of a

peremptory challenge. Merely making such an objection does not demonstrate the impropriety of a peremptory challenge; it merely raises a question about its motivation. Presuming prejudice from a lawyer's failure to make the objection would create the unwarranted presumption that all *Batson* objections have merit.

█ *Batson* can be harmonized with *Strickland* not in attempting to evade *Strickland*'s prejudice inquiry by presuming prejudice unjustifiably, but in applying *Strickland*'s prejudice requirement to evaluate the effect of the forgone challenge on the outcome of the event to which it properly applies: the jury selection process. Applying *Strickland* to the jury selection process would require a criminal defendant to prove that if the *Batson* objection had been made there was a "reasonable probability" it would have been sustained and that the trial judge would have taken curative action before the trial began.

Determining prejudice through an evaluation of the result of a hypothetical *Batson* objection protects both *Strickland*'s principle of outcome determinative prejudice and *Batson*'s mandate that the jury selection process not be infected by purposeful discrimination. Although the Supreme Court may not have contemplated applying *Strickland*'s prejudice standard to the outcome of the jury selection process, it did counsel in *Strickland* that

> [m]ost important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although the those principles should guide the process of decision, the ultimate focus of the inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069. In this case, the unique requirements of *Batson* require that *Strickland*'s prejudice test be focused on jury selection process.

In *Batson* and other peremptory challenge cases, the Court has held that improperly motivated peremptory challenges are not subject to harmless error review. This hold-

ing reflects the view that peremptory challenges motivated by race or gender are essentially outcome determinative events. It is necessary to reverse a verdict rendered by a jury whose composition was affected by a improperly motivated peremptory challenge, regardless whether there is any evidence that the result was improper, because the challenge is deemed to have "cast doubt on the integrity of the judicial process." *Powers*, 499 U.S. at 411, 111 S.Ct. at 1370 (citations omitted). The result of applying *Strickland*'s prejudice standard to the jury selection process in the manner I have discussed would be identical to the result that would obtain if defense counsel had made a *Batson* objection and the trial judge had overruled the objection improperly: the verdict would be overturned. The prejudice prong of *Strickland* can be applied to evaluate whether a *Batson* objection would have been sustained had it been made.

In reviewing the record of this case to ascertain whether a *Batson* objection would have been sustained, I am constrained by the rule that the state courts' factual findings can be disturbed only on a showing of clear error. 28 U.S.C. § 2254(d). Even on direct review of an overruled *Batson* objection the trial court's evaluation of a prosecutor's reasons for using a peremptory challenge can be reversed only on a showing of clear error. *Hernandez v. New York*, 500 U.S. 352, 363–66, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991). This highly deferential standard reflects the recognition that the trial court's determination is based primarily on credibility, the evaluation of which "lies 'peculiarly within a trial judges province.'" *Hernandez*, 500 U.S. at 365, 111 S.Ct. at 1869 (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985)). Therefore, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, then the reason offered will be deemed race-neutral." *Chandler*, 12 F.3d at 1432 (quoting *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866).

In addition to holding that all but obviously discriminatory explanations should be accepted as neutral, the Court of Appeals for the Seventh Circuit has explained that *Batson* does not require that a prosecutor's explanation "be sufficient to justify a challenge for cause in order to be race neutral" and that peremptory challenges may be based on "a prosecutor's 'intuitive assumptions that are not fairly quantifiable.'" *Williams v. Chrans*, 957 F.2d 487, 490 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992) (citations omitted).

■ Petitioner maintains that in his case the explanation was insufficient because 1) it had a racial element (assuming family relationship because of race); 2) it was not supported by any questioning of the prospective juror to determine his actual relationship. Courts have recognized that striking a black juror because of a familial relationship to individuals involved in the criminal justice system is a neutral reason to strike a juror. *See, e.g., United States v. Johnson*, 941 F.2d 1102 (10th Cir.1991) (striking a black potential juror because brother once convicted of a crime and because family history suggests anti-government bias are race-neutral reasons for peremptory strike); *United States v. Bennett*, 928 F.2d 1548 (11th Cir.1991) (prior family involvement with drug offenses is race-neutral basis to strike black potential juror); *United States v. Hughes*, 911 F.2d 113 (8th Cir.1990) (incarceration of nephew of black potential juror is race neutral reason for a strike). Additionally, courts have accepted the rationale that a potential juror's name may be sufficient to imply a relationship to known criminals with the same name. *United States v. Terrazas–Carrasco*, 861 F.2d 93, 94–95 and n. 1 (5th Cir.1988); *People v. Smith*, 236 Ill.App.3d 812, 816, 177 Ill.Dec. 51, 55, 602 N.E.2d 946, 950 (1992), *review denied*, 148 Ill.2d 651, 183 Ill.Dec. 29, 610 N.E.2d 1273 (1993).

Plaintiff contends that race entered impermissibly into the challenge when the prosecutor assumed that one black person would be related to other black persons with the same surname. However, the fact that persons with the same name were all the same race made it more likely that they were related when the name is a particularly uncommon one and the rate of inter-racial marriage in Wisconsin and the United States is low. Moreover, nothing in the record indicates

that the prosecutor was asked whether he would have struck a potential white juror with the same surname as the black potential juror or with a surname of any other family with an extensive history of criminal involvement.

Petitioner argues that the impermissibility of the strike is shown by the mere possibility that the potential juror was struck on the assumption that his race made it more likely that he was related to known criminals. However, *Batson* prohibits striking a juror "solely" on account of his race; it does not say that every peremptory strike with some relationship to race is impermissible. *Batson*, 476 U.S. at 98, 106 S.Ct. at 1724; *United States v. Brown*, 817 F.2d 674 (10th Cir.1987) (peremptory strike for "legitimate reasons tangentially connected" to race not impermissible).[2]

The prosecutor's failure to ask the potential juror questions on *voir dire* does not demonstrate purposeful discrimination. The prosecutor believed that many persons with the same surname of the potential juror had a history of criminal conduct. His intuition was verified at the post-conviction hearing by evidence that 62% of the individuals listed in the Beloit telephone book with that name have been charged with crimes. It is true that the prosecutor did not inquire into whether potential juror was related to any these individuals, but at least one court has determined on similar facts that the prosecutor need not establish a relationship; "[t]he possibility that this juror could have been related to other people previously prosecuted ... was a sufficiently race-neutral reason for excusing the juror." *Smith*, 602 N.E.2d at 950. Even if the assumption of relationship were based purely on intuition, it would not be impermissible. *Williams*, 957 F.2d at 490. I conclude that in this case the record does not reflect that either of the state courts committed clear error in determining that the prosecutor had a race-neutral explanation for peremptorily challenging the potential juror.

## ORDER

IT IS ORDERED that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED for his failure to show that he is in custody in violation of the Constitution or laws of the United States.

---

2. The Court of Appeals for the Second Circuit has recognized that *Batson* objections can be subject to a mixed-motive analysis under *Mt. Healthy City School Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), when a prosecutor has more than one reason for making a strike. *Howard v. Senkowski*, 986 F.2d 24 (2nd Cir.1993). Petitioner has not cited *Howard* or suggested that a mixed-motive analysis should be applied to this case. The argument would have been unpersuasive even if petitioner has raised it. There is no evidence in this case that the potential juror's race in itself was an independent motivation for the strike. At most, the potential juror's race contributed to the prosecutor's belief in the existence of a relationship between the potential juror and criminals with the same surname. There is no reason to believe that a white potential juror would not have been challenged if there were indications that he was related to a family of criminals.